United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA AHMED, et al.,<br><br>          Plaintiffs,<br><br>v.<br><br>CITY OF ANTIOCH, CALIFORNIA, et al.,<br><br>          Defendants. | Case No.  16-cv-01693-HSG<br><br>**GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 10, 11 |

Pending before the Court are two motions to dismiss Plaintiffs' complaint brought by (1) Contra Costa County and Director William Walker, M.D. (the "County MTD") and (2) the City of Antioch, the Antioch Police Department, Antioch Police Chief Allan Cantando, Officer Huleman, and Officer Smith (the "City MTD").  Dkt. Nos. 10, 11.  For the reasons articulated below, the motions are GRANTED.

I.   **BACKGROUND**

For purposes of deciding the motions, the Court accepts the following as true:

On April 4, 2015, Defendant Antioch Police Department received a call from Afroza Chowdhury, who was living at her ex-husband's home.  Dkt. No. 1 ("Compl.")  ¶¶ 1, 24. Defendants Officer Huleman and Officer Smith responded to the call, but when they arrived they found it difficult to understand Ms. Chowdhury.  *Id.* ¶¶ 25-26.  The officers spoke with Ms. Chowdhury's son, Plaintiff Yassar Ahmed, who gave them his number and asked them to call him if they took his mother anywhere so that he could come to assist her.  *Id.* ¶¶ 26-27.  Ms. Chowdhury was mentally unstable and expressing suicidal ideations.  *Id.* ¶ 23.

Officers Huleman and Smith decided to put Ms. Chowdhury in an involuntary psychiatric hold under California Welfare & Institutions Code § 5150, and simultaneously took her ex-husband into custody for suspicion of domestic violence.  *Id.* ¶¶ 28-29.  Ms. Chowdhury was taken

1    to the Contra Costa Regional Medical Center ("CCMC") by ambulance, but Officers Huleman and

2    Smith did not inform Mr. Ahmed.  *Id.* ¶¶ 30-31.

3            Once at CCMC, Ms. Chowdhury was seen by Defendant Victor Torres-Collazo, M.D., a

4    psychiatrist.  *Id.* ¶ 32.  Dr. Torres-Collazo released Ms. Chowdhury from the involuntary

5    psychiatric hold in the early hours of April 5, 2015.  *Id.* ¶ 32.  Despite CCMC's policy of notifying

6    next of kin prior to releasing mental health patients, no one attempted to notify Ms. Chowdhury's

7    family before she was released.  *Id*. ¶¶ 33-34.

8            Upon her release, Ms. Chowdhury was placed in a taxi cab owned by Defendant Concord

9    Cab Company and driven by Defendant Kyle Gourley.  *Id.* ¶ 35.  CCMC gave Mr. Gourley a

10   payment slip and directed him to drive Ms. Chowdhury back to her ex-husband's home.  *Id.* ¶ 36.

11   Ms. Chowdhury repeatedly questioned Mr. Gourley about their destination during the drive.  *Id.*

12   ¶ 37.  While the taxi was still moving on the freeway, Ms. Chowdhury opened the passenger door

13   and jumped out.  *Id.* at ¶¶ 38-39.  She was struck and killed on the freeway.  *Id.* ¶ 39.

14           Plaintiffs Maria Ahmed and Yassar Ahmed, successors-in-interest to Ms. Chowdhury's

15   estate, bring five claims for relief under 42 U.S.C. § 1983 and California statutes:  (1) deliberate

16   indifference to Ms. Chowdhury's medical needs in violation of the Fourteenth Amendment; (2)

17   supervisory liability in violation of the Fourteenth Amendment; (3) a *Monell* claim; (4) a "survival

18   action"; and (5) wrongful death.  *See generally id.*

19   **II.    DISCUSSION**

20           On April 28, 2016, Defendants Contra Costa County and Dr. Walker[1] (together, the

21   "County Defendants") moved to dismiss Plaintiffs' claims as to the County Defendants.  County

22   MTD.  On April 29, 2016, Defendants City of Antioch, Chief Cantando,[2] the Antioch Police

---

[1] Dr. Walker is sued both individually and in his official capacity as the Director of Contra Costa County Health Services.  *See* Compl. at 1-2.  A suit against Dr. Walker in his official capacity as a county officer is no different than a suit against the county itself.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)); *see also Roy v. Contra Costa Cnty.*, No. 15-cv-02672-TEH, 2015 U.S. Dist. LEXIS 131814, at *10 (N.D. Cal. Sep. 29, 2015).  Accordingly, the Court's references to Dr. Walker will refer to claims against him individually; all other claims against him are subsumed by the claims against Contra Costa County.
[2] As with Dr. Walker, the Court's references to claims against Chief Cantando refer to his liability in his individual capacity.  *See Will*, 491 U.S. at 71; *see also Roy*, 2015 U.S. Dist. LEXIS 131814,

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Department, Officer Huleman, and Officer Smith (together, the "City Defendants") moved to

2  dismiss Plaintiffs' complaint as to the City Defendants.  Both the County Defendants and the City

3  Defendants contend that Plaintiffs' complaint fails to state a claim for which relief can be granted.

4  **A.   Legal Standard**

5  Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

6  statement of the claim showing that the pleader is entitled to relief[.]"  A defendant may move to

7  dismiss a complaint for failing to state a claim upon which relief can be granted under Federal

8  Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

9  complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

10  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

11  12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on

12  its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570 (2007).  A claim is facially plausible

13  when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

14  the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

15  In reviewing the plausibility of a complaint, courts "accept factual allegations in the

16  complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

17  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless,

18  Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

19  fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

20  2008).  And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if

21  he "plead[s] facts which establish that he cannot prevail on his . . . claim."  *Weisbuch v. Cnty. of*

22  *Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

23  If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even

24  if no request to amend the pleading was made, unless it determines that the pleading could not

25  possibly be cured by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir.

26  2000) (quotation marks and citation omitted).

27

28  at *10.  Claims against Chief Cantando in his official capacity as Antioch Police Chief are
duplicative of claims against the City of Antioch.

**B.     Section 1983 Claims (Claims One, Two, Three, and Four)**

Plaintiffs assert four claims under § 1983:  (1) deliberate indifference to Ms. Chowdhury's medical needs in violation of the Fourteenth Amendment; (2) supervisory liability in violation of the Fourteenth Amendment; (3) a *Monell* claim; and (4) a "survival action."  *See* Compl.

"To state a section 1983 claim, the plaintiff must allege that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right."  *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir. 1992).

"In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation:  there is no respondeat superior liability under section 1983."  *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658 (1978)).  Likewise, a government entity "cannot be held liable under § 1983 on a respondeat superior theory."  *Monell,* 436 U.S. at 691.  A government entity can only be liable under § 1983 if "a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell,* 436 U.S. 658)).

With these principles in mind, the Court will address the sufficiency of each of Plaintiffs' § 1983 claims.

**i.     Deliberate Indifference to Ms. Chowdhury's Medical Needs (Claim One)**

Plaintiffs allege that both the City Defendants and the County Defendants "knew, or should have known" that it was "necessary to safeguard" or continually supervise an individual threatening suicide such as Ms. Chowdhury.  *See*  Compl. ¶¶ 44, 51.  Further, Plaintiffs contend, through their "deliberate indifference," the City and County Defendants affirmatively placed, or allowed others to affirmatively place, Ms. Chowdhury in peril, which led to her suicide.  *Id.* ¶¶ 41, 50.  The Court finds that Plaintiffs' claim for deliberate indifference to medical needs fails as to both the City and the County Defendants.

"Deliberate indifference is a stringent standard of fault."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011) (internal quotations and citations omitted).  In the Ninth Circuit, deliberate indifference is "a higher standard than gross negligence because it requires a culpable

United States District Court
Northern District of California

1    mental state, meaning that the state actor must recognize an unreasonable risk and actually intend

2    to expose the plaintiff to such risks without regard to the consequences to the plaintiff." *Campbell*

3    *v. State of Washington Dep't of Soc. & Health Servs.*, 671 F.3d 837, 846 (9th Cir. 2011) (quoting

4    *Patel*, 648 F.3d at 974).

5                                    **a.  Officers Huleman and Smith**

6              In the most threadbare terms, Plaintiffs allege that the City Defendants, including Officers

7    Huleman and Smith, "affirmatively placed [Ms. Chowdhury], or through their deliberate

8    indifference allowing others to affirmatively place [her], in danger of acting on her suicidal

9    ideations."  *See* Compl. ¶ 43.  According to Plaintiffs, the officers "deliberately failed to provide

10   the necessary safeguarding or warn others" that Ms. Chowdhury was a danger to herself.  *Id.* ¶ 44.

11             Plaintiffs' complaint is entirely devoid of non-conclusory facts to plausibly support a

12   finding that Officers Huleman and Smith intended to expose Ms. Chowdhury to the risk of suicide

13   without regard to her safety.  *See Campbell*, 671 F.3d at 846.  Indeed, Plaintiffs acknowledge that

14   Officers Huleman and Smith took the time to speak with Plaintiff Ahmed when they could not

15   understand Ms. Chowdhury and, presumably to avoid any suicidal acts, placed her under an

16   involuntary psychiatric hold.  Compl. ¶¶ 26-29.  While Plaintiffs need not allege deliberate

17   indifference with specificity at the motion to dismiss stage, the sparse complaint fails to plead

18   sufficient facts to support a reasonable inference that the actions of Officers Huleman and Smith

19   rose to the "stringent standard" of deliberate indifference.

20             The Court GRANTS the City Defendants' motion to dismiss Plaintiffs' claim for

21   deliberate indifference to medical needs against Officers Huleman and Smith.

22                                **b.  Chief Cantando and Dr. Walker**

23             While Plaintiffs assert a claim for deliberate indifference to medical needs against Chief

24   Cantando and Dr. Walker, Plaintiffs' complaint contains no allegations that Chief Cantando or Dr.

25   Walker personally participated in any alleged deprivation of Ms. Chowdhury's constitutional

26   rights.  *See generally* Compl.  Without allegations of personal participation by Chief Cantando or

27   Dr. Walker, Plaintiffs' claim must fail.  *See Jones*, 297 F.3d at 934.

28             Accordingly, the Court GRANTS the motions to dismiss Plaintiffs' first claim against

United States District Court
Northern District of California

1  Chief Cantando and Dr. Walker.

2  ### c.  City of Antioch

3  Because Antioch cannot be held liable for a § 1983 violation under a respondeat superior

4  theory, Plaintiffs must plead that it possessed "a policy, practice, or custom" that was "a moving

5  force behind a violation of constitutional rights." *See Dougherty*, 654 F.3d at 900.  In other words,

6  Plaintiffs must allege "(1) that [Ms. Chowdhury] possessed a constitutional right of which she was

7  deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate

8  indifference to [Ms. Chowdhury's] constitutional right; and, (4) that the policy is the moving force

9  behind the constitutional violation." *See id.* (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of*

10  *Yamhill*, 130 F.3d 432, 438 (9th Cir.1997)).

11  As an initial matter, Plaintiffs fail to allege that Antioch possessed a policy that was the

12  moving force behind Ms. Chowdhury's suicide.  *See generally* Compl.  Even if it is assumed that

13  placing Ms. Chowdhury under a 5150 hold contributed to her suicide, Plaintiffs do not assert that

14  Officers Huleman and Smith followed any policy, practice, or custom when they did so.  *Id.*

15  Moreover, as with Officers Huleman and Smith, nothing in the complaint plausibly suggests that

16  Antioch acted with the stringent levels of knowledge and intent that deliberate indifference

17  requires.  *See Campbell*, 671 F.3d at 846 (quoting *Patel*, 648 F.3d at 974).

18  As such, the Court GRANTS the City Defendants' motion to dismiss Plaintiffs' first claim

19  as to Antioch.

20  ### d.  Contra Costa County

21  For the same reasons that Plaintiffs do not state a claim against Antioch for deliberate

22  indifference to medical needs, Plaintiffs' claim against Contra Costa County is inadequate.  *See*

23  *Dougherty*, 654 F.3d at 900.

24  Plaintiffs do not point to any county policy, practice, or custom that contributed to Ms.

25  Chowdhury's suicide.  *See generally* Compl.  Rather, Plaintiffs assert that CCMC possessed "a

26  policy to notify next of kin prior to releasing a patient admitted for mental health issues," and it

27  was Dr. Torres-Collazo's breach of said policy that contributed to Ms. Chowdhury's suicide.  *Id.*

28  ¶¶ 33-34.  Such an assertion that Contra Costa County possessed a policy that, if followed, would

6

United States District Court
Northern District of California

1  have prevented Ms. Chowdhury's suicide, directly contradicts an argument that the same policy

2  constituted deliberate indifference towards Ms. Chowdhury's safety.

3       As such, the Court GRANTS the County Defendants' motion to dismiss the first claim

4  against Contra Costa County.

5              **ii.    Supervisory Liability (Claim Two)**

6       Next, Plaintiffs bring a supervisory liability claim against Chief Cantando and Dr. Walker.

7  *See* Compl. ¶¶ 60-70.  Again, in entirely general and conclusory terms, Plaintiffs contend that

8  Chief Cantando and Dr. Walker (1) "have either participated in, or known of, or must have known

9  of their inadequate policies, procedures and training of their subordinates and those subordinates'

10  deliberate indifference in failing to . . . safekeep mentally ill persons threatening suicide," *id.*

11  ¶¶ 61, 67; (2) "failed to properly supervise the . . . safekeeping mentally ill persons threatening

12  suicide," *id.* ¶¶ 62, 68; (3) "ratified the misconduct and constitutional violations" as "policy-

13  making officials," *id.* ¶¶ 63,69; and (4) "set in motion a series of acts that they knew or must have

14  known would cause the subordinates" to violate Ms. Chowdhury's constitutional rights, *id.* ¶¶ 64,

15  70.  The Court holds that the aforementioned boilerplate allegations are insufficient to state a

16  claim for supervisory liability against Chief Cantando or Dr. Walker.

17       In the Ninth Circuit, "a defendant may be held liable as a supervisor under § 1983 if there

18  exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a

19  sufficient causal connection between the supervisor's wrongful conduct and the constitutional

20  violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Jeffers v. Gomez*, 267 F.3d 895,

21  915 (9th Cir. 2001).  Such conduct may take the form of "culpable action or inaction in the

22  training, supervision, or control of subordinates," "acquiescence in the constitutional deprivations

23  of which the complaint is made," or conduct displaying "reckless or callous indifference to the

24  rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal

25  citations omitted).  "Vague and conclusory allegations of official participation in civil rights

26  violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of

27  Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

28       As established above, the complaint lacks any allegations of personal involvement by

1   Chief Cantando or Dr. Walker in the events the led to Ms. Chowdhury's suicide.  *See generally*

2   Compl.  Even assuming that Plaintiffs adequately pled that Officer Huleman, Officer Smith, or Dr.

3   Torres-Collazo violated Ms. Chowdhury's constitutional rights, there are no facts that plausibly

4   suggest that Chief Cantando or Dr. Walker knew of, acquiesced in, or ratified their actions.  *Id.*

5   Plaintiffs' "bald and conclusory allegations are insufficient to establish individual liability under

6   42 § 1983."  *See Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

7       The Court GRANTS the motions to dismiss Plaintiffs' claim for supervisory liability

8   against Chief Cantando and Dr. Walker.

9           iii.   ***Monell* Claim (Claim Three)**

10      Plaintiffs assert a *Monell* claim against Antioch and Contra Costa County.  *See* Comp.

11  ¶¶ 71-81.  Plaintiffs allege that Officer Huleman, Officer Smith, and Dr. Torres-Collazo "acted in

12  conformity with the . . . customs, policies, and practices [of Antioch and Contra Costa County] in

13  failing to properly safekeep mentally ill persons threatening suicide, such as [Ms. Chowdhury]."

14  *Id.* ¶¶ 72, 77.  Further, according to Plaintiffs, Antioch and Contra Costa County "failed to

15  properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline" Officer

16  Huleman, Officer Smith, and Dr. Torres-Collazo "with deliberate indifference" to Ms.

17  Chowdhury's constitutional rights.  *Id.* ¶¶ 73, 78.  The Court finds such conclusory allegations

18  insufficient to state a *Monell* claim against either Antioch or Contra Costa County.

19      As previously stated, a plaintiff asserting a *Monell* claim must allege "a policy, practice, or

20  custom" that was "a moving force behind a violation of constitutional rights."  *Dougherty*, 654

21  F.3d at 900.  A complaint alleging *Monell* violations "may not simply recite the elements of a

22  cause of action, but must contain sufficient allegations of underlying facts to give fair notice and

23  to enable the opposing party to defend itself effectively."  *AE ex rel. Hernandez v. Cty. of Tulare*,

24  666 F.3d 631, 637 (9th Cir. 2012) (citations omitted); *Save CCSF Coal. v. Lim*, No. 14-cv-05286-

25  SI, 2015 U.S. Dist. LEXIS 69195, at *41-42 (N.D. Cal. May 27, 2015).

26      Plaintiffs' allegations do nothing more than recite the elements of a *Monell* claim, using

27  key buzzwords such as "conformity," "customs," "policies," and "practices."  *See generally*

28  Compl.  Such boilerplate assertions, which do not even specify the alleged custom, policy, or

United States District Court
Northern District of California

8

United States District Court
Northern District of California

1   practice that was followed, are plainly insufficient.  *See Sternberg v. Town of Danville*, No. 15-cv-

2   01878-SI, 2015 U.S. Dist. LEXIS 169068, at *14 (N.D. Cal. Dec. 16, 2015); *see also Van Dusen*

3   *v. City of Oakland*, No. 13-cv-05023-HSG, 2015 U.S. Dist. LEXIS 51777, at *23 (N.D. Cal. Apr.

4   20, 2015).

5        The Court GRANTS the motions to dismiss Plaintiffs' *Monell* claim against Antioch and

6   Contra Costa County.

7        **iv.   Survival Action (Claim Four)**

8        In their fourth claim, Plaintiffs purport to assert a "survival action" against all Defendants.

9   *See* Compl. ¶¶ 82-85.

10       "[A] survival action is not an independent cause of action, it is a procedural vehicle to

11  ensure that 'a cause of action for or against a person is not lost by reason of the person's death, but

12  survives subject to the applicable limitations period.'"  *Estate of Lopez v. Gelhaus*, No. 13-CV-

13  5124-PJH, 2016 WL 234401, at *10 (N.D. Cal. Jan. 20, 2016) (quoting Cal. Civ. Proc. § 337.20).

14  For example, it is a vehicle by which a decedent's survivors can assert claims under § 1983.  *See*

15  *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1103 (9th Cir.), *cert. denied sub nom. City of Los*

16  *Angeles, Cal. v. Chaudhry*, 135 S. Ct. 295, 190 L. Ed. 2d 141 (2014).

17       Consequently, Plaintiffs' "survival action" claim is not a proper independent claim, and the

18  Court GRANTS the motions to dismiss it.

19       **C.   Wrongful Death Claim (Claim Five)**

20       Finally, Plaintiffs allege a wrongful death claim against all Defendants under California

21  state law.  *See* Compl. ¶¶ 86-104.  According to Plaintiffs, the City Defendants caused Ms.

22  Chowdhury's death "as a result of their negligent conduct and/or negligent failure to act."  *Id.*

23  ¶ 87.  Similarly, the County Defendants "were negligent in examination, diagnosis, care,

24  treatment, and observation" of Ms. Chowdhury, as well as when they "released [her] without

25  notifying her next of kin."  *Id.* ¶ 91.  The Court holds that Plaintiffs' wrongful death allegations

26  are insufficient to state a claim.

27       To successfully state a claim for wrongful death in California, a plaintiff must allege "(1) a

28  wrongful act or neglect on the part of one or more persons that (2) causes (3) the death of another

9

person." *Machado v. Nguyen*, No. 12-CV-06501-JSC, 2014 WL 2795474, at *8 (N.D. Cal. June 19, 2014) (citing *Norgart v. Upjohn Co.*, 21 Cal.4th 383, 390 (1999)). A wrongful death claim fails if it does not allege the "manner in which [the defendant] was negligent, or how any such negligence caused or contributed in any manner to any specified injury." *Bem v. Stryker Corp.*, No. C 15-2485 MMC, 2015 WL 4573204, at *1 (N.D. Cal. July 29, 2015).

For the same reasons that Plaintiffs' § 1983 claims are deficient, Plaintiffs fail to state a claim for wrongful death against the City or County Defendants. Plaintiffs' allegations that the City Defendants were negligent are entirely conclusory — Plaintiffs do not identify the manner in which the City Defendants were allegedly negligent or how such alleged negligence contributed to Ms. Chowdhury's suicide. *See Bem*, 2015 WL 4573204, at *1. Plaintiffs' assertion that the County Defendants were negligent in releasing Ms. Chowdhury without contacting her next of kin comes closer. *See* Compl. ¶ 91. But Plaintiffs' threadbare complaint fails to articulate non-conclusory facts that support a cognizable legal theory under which the County Defendants, who had no direct contact with Ms. Chowdhury, are liable for Ms. Chowdhury's unfortunate death. *See Mendiondo*, 521 F.3d at 1104.

Accordingly, the Court GRANTS the motions to dismiss the wrongful death claim against the City and County Defendants.

## III.   CONCLUSION

For the aforementioned reasons, the Court GRANTS WITH LEAVE TO AMEND the City MTD and the County MTD. Plaintiffs may file a first amended complaint within 21 days of the date of this Order. With respect to the § 1983 claims, the Court cautions Plaintiffs that they must allege sufficient non-conclusory facts that would support a reasonable inference that Defendants acted with deliberate indifference.

**IT IS SO ORDERED.**

Dated: July 1, 2016

HAYWOOD S. GILLIAM, JR.
United States District Judge